**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NORTH DAKOTA**
**SOUTHWESTERN DIVISION**

| | | |
|---|---|---|
| Michael Gordon, | ) | |
| | ) | |
| Plaintiff, | ) | **REPORT AND RECOMMENDATION** |
| | ) | **RE § 1915A SCREENING** |
| vs. | ) | |
| | ) | |
| Leann K. Bertsch, Director, et. al., | ) | Case No. 1:15-cv-026 |
| | ) | |
| Defendants. | ) | |

Plaintiff Michael Gordon is in custody serving a federal sentence.[1]  He initiated this action while being housed at the North Dakota State Penitentiary ("NDSP").  Since then, he was removed from the NDSP and has been housed in several different penal institutions, including now, most recently, the Mississippi State Penitentiary at Parchman, Mississippi.  This matter is now before the court for the initial screening required by 28 U.S.C. § 1915A.

I.     BACKGROUND

   A.     **Plaintiff's pleadings**

Plaintiff initiated this action by filing three documents, two of which are labeled "complaint." The first is this court's standard form for inmate's bringing civil rights claims, which plaintiff completed by handwriting out his claims in the spaces provided and attaching a handwritten "Statement of Facts."  (Doc. No. 4).  This complaint is 16 pages long and lists 22 named defendants and 6 unnamed defendants.  Although not dated, there is a certificate of service which represents that it was served on "opposing counsel" on March 5, 2015.

---

[1]  According to plaintiff, he is "serving a federal sentence of 137.7 years of incarceration for the convictions of seven (7) violations of the Hobbs Act (18 U.S.C. § 1951) and seven (7) violations of carrying a firearm (18 U.S.C. § 924(c)) during the commission of a crime."  (Docket No. 12).

The second document captioned complaint is typed, 33 pages in length, and names 26 defendants by name and six unnamed defendants. It appears to address and expand upon the same claims set forth in the first complaint. (Doc. No. 4-2). Although it too is not dated, a certificate of service represents it was served on "opposing counsel" on March 22, 2015.

The third document is a typed "Statement of Material Facts." Except for the introductory paragraph immediately below the caption, it is an exact duplicate of what is recited in the second complaint.

Since the second complaint is the more comprehensive document and appears to have been created later in time, it will be considered the operative pleading.[2] Also, it will be referred to herein as the "amended complaint" since the Clerk has re-filed it as such along with the typed "Statement of Material Facts" as an attachment.[3] (Doc. No. 12).

Finally, since the filing of the amended complaint, plaintiff has made two additional submissions of documents that he requests be included as exhibits to the amended complaint. (Doc. Nos. 19 & 20). These two submissions, which total 342 pages, are copies of grievances, kites (prison parlance for inmate communications to staff), administrative determinations, correspondence, the NDSP Inmate Handbook, the NDSP Administrative Segregation Procedures, and other documents.

In this instance, plaintiff's invitation to add these documents to his amended complaint as exhibits will be declined for two reasons. First, to do so in this instance would violate Fed. R. Civ. P. 8(a)'s requirement that the complaint be limited to a short and plain statement of the claim

---

[2] The court will still give effect to the first complaint for one purpose, which is to support this court's jurisdiction, since it is the only document that references a jurisdictional statute, *i.e.*, 28 U.S.C. § 1343(a)(3). Notably, 42 U.S.C. § 1983 is not a jurisdiction-conferring statute.

[3] If plaintiff should submit another amended pleading, it would be helpful if he would label it as the second amended complaint.

showing that the pleader is entitled to relief.[4]   Second, few if any of the "exhibits" are expressly

identified in the amended complaint and do not appear to be in any particular order.  While a court

has some latitude in construing what should be the operative pleading for persons proceeding *pro

se*, neither this court nor any defendant should be required to sift through all of this material to

determine whether plaintiff has stated proper claims for relief with respect to each defendant he

wishes to sue in their individual capacities and for the defendants to be fairly put on notice of the

claims against them and be able to respond. <u>See</u>, <u>e.g.</u>, <u>Young v. Demehick</u>, 363 Fed.Appx. 156, 158

(3d Cir. 2010) (unpublished *per curiam*) (district court did not err in concluding that the voluminous

number of documents submitted by a pro se litigant would not be considered part of the complaint

based on Fed. R. Civ. P. 8(a)'s requirements and requiring an amended complaint); <u>Windsor v. Colo.

Dep't of Corr.</u>, 9 Fed. App'x 967, 969 (10th Cir. 2001) (concluding that the complaint failed to

comply with Rule 8's requirements because "[t]he sheer volume of the complaint and its attachments

fail to give the Defendants fair notice of the basis of the claims against them so they may respond,

or allow this court to conclude the allegations, if proven, show Appellants in this case are entitled

to relief."). Consequently, the undersigned's review and recommendations for purposes of the §

1915A screening will be limited to the amended complaint.

**B.**    **Plaintiff's claims**

Plaintiff's amended complaint contains a number of claims and sub-claims.  Liberally

construing the amended complaint, it appears to assert:

---

[4] Of course, this requirement is relative and subject here to the requirements set forth below that plaintiff plead sufficient facts to state a plausible claim as to <u>each</u> defendant from whom relief is being sought and the fact plaintiff seeks to hold a multitude of individuals accountable in their individual capacities for damages.  In other words, if plaintiff wants to sue all of these people individually, he cannot complain about the effort that may be required to meet the relevant pleading requirements.

(1)     several claims of deliberate indifference under the Eighth Amendment to serious medical needs;

(2)     several First Amendment claims arising out of restrictions on prisoner communications;

(3)     claims of retaliation against all named defendants;

(4)     a claim of denial of equal protection arising out of alleged preferences and privileges extended to those in the "South Unit;"

(5)     a claim of denial of due process on account of the prison commissary allegedly charging too much for prison commissary items; and

(6)     a possible denial-of-access-to-the-courts claim.

**C.     Defendants**

As noted above, plaintiff seeks to sue 26 named defendants and 6 unnamed defendants. Twenty-five of the named defendants are employed by the State of North Dakota and all but two are employees of the NDSP and including the Warden, a previous acting Warden, and most of the other NDSP supervisory personnel.   The other two state employees are employed at the North Dakota Department of Corrections and Rehabilitation ("NDDOCR"), which is responsible for the operation of all of the State's correctional facilities, including the NDSP.  Defendant Bertsch is the Director of the NDDOCR Director.  Defendant Krabbenhoft is another NDDOCR executive who is identified in the amended complaint as the "acting director," most likely because he may have acted in that capacity in Director Bertsch's absence.

The one personally named defendant who is not a state employee is defendant Jussila.  She

is identified as being plaintiff's federal case manager and, presumably, an employee of the federal

Bureau of Prisons.

The six unnamed defendants are all alleged to be federal employees.  One is described as an

"unknown federal medical director."  The other five are identified as "unknown federal medical

doctors."

### D.      Requests for relief

Plaintiff seeks nominal damages for each constitutional violation suffered, compensatory

damages, and punitive damages.  The requests for damages appear to be confined to his claims

against the defendants in their individual capacities.[5]  Plaintiff also requests injunctive relief in the

form of treatment for his alleged medical issues and an order requiring the NDSP to change the

policies challenged in the action.

## II.      <u>STANDARD GOVERNING INITIAL REVIEW</u>

When a prisoner proceeding in forma pauperis seeks to sue a governmental entity, officer,

or employee, the Prison Litigation Reform Act of 1995 ("PLRA") requires the court to conduct an

early screening of the complaint to weed out claims that clearly lack merit with the hope this will

help to lessen the burdens imposed by the ever-rising numbers of prisoner suits, which too often are

frivolous and without merit.  <u>Jones v. Bock</u>, 549 U.S. 199, 202-03 (2007); <u>Woodford v. Ngo</u>, 548

U.S. 81, 83-84 (2006).  In conducting the screening required by 28 U.S.C. § 1915A, the court is

---

[5]  The Eleventh Amendment prohibits suit against the state employees in their official capacities since such a suit is deemed to be one against the State of North Dakota.  <u>See</u>, <u>e.g.</u>, <u>Murphy v. State of Ark.</u>, 127 F.3d 750, 754 (8th Cir. 1997)

required to identify any cognizable claims and to dismiss the complaint, or any part of it, that is frivolous, malicious, fails to state a claim, or seeks monetary relief from an immune defendant.

Neither 42 U.S.C. § 1983 nor the PLRA imposes any heightened pleading requirements. Jones v. Bock, 549 U.S. at 211-12. Consequently, in order to state a cognizable claim, the complaint need only meet the minimum requirements of Fed. R. Civ. P. 8(a)(2), which are that it contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Erickson v. Pardus, 551 U.S. 89, 93 (2007) (*per curiam*).

The court is obligated to construe a *pro se* complaint liberally and hold it to a less stringent standard than what normally would be required of attorneys. Id.; see also Federal Express Corp. v. Holowecki, 552 U.S. 389, 402 (2008); Solomon v. Petray, 795 F.3d 777, 787 (8th Cir. 2015). This does not mean that the court must accept everything or anything that is filed by *pro se* prisoners, however. In enacting the screening requirement, Congress obviously expected it to be more than a ritualistic exercise and that courts would only allow to go forward those claims that are cognizable, that seek relief from a non-immune party, and that are not obviously frivolous or malicious

To meet the minimal pleading requirements of Rule 8(a)(2) for stating a cognizable claim, something more is required than simply expressing a desire for relief and declaring an entitlement to it. See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556 n.3 (2007) ("Bell Atlantic"). The complaint must state enough to "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Erickson v. Pardus, 551 U.S. at 93 (quoting Bell Atlantic, 550 U.S. at 555). And, even though the complaint is to be liberally construed, it must also contain enough to satisfy Bell Atlantic's "plausibility standard." E.g., Ventura-Vera v. Dewitt, 417 F. App'x 591,

592, 2011 WL 2184269, *1 (8th Cir. 2011) (unpublished *per curiam*) (citing <u>Harris v. Mills</u>, 572 F.3d 66, 72 (2d Cir. 2007) for the appropriate post-<u>Bell Atlantic</u> standard); <u>see also</u> <u>Stone v. Harry</u>, 364 F.3d 912, 914 (8th Cir. 2004) (*pro se* complaints must allege sufficient facts to state a claim). Complaints that offer nothing more than labels and conclusions or a formulaic recitation of the elements are not sufficient. <u>See</u> <u>id.</u> Frivolous claims are those that are clearly baseless, fanciful, fantastic, or delusional. <u>See</u> <u>Denton v. Hernandez</u>, 504 U.S. 25, 32-34 (1992).

To state a cognizable claim under § 1983, a plaintiff must normally allege a violation of a right secured by the Constitution or the laws of the United States and that the alleged deprivation was committed by a person acting under color of state law. <u>West v. Atkins</u>, 487 U.S. 42, 48 (1988); <u>Walker v. Reed</u>, 104 F.3d 156, 157 (8th Cir. 1997). Even under liberal pleading standards, a *pro se* litigant, at the very least, must invoke rights under the Constitution or federal law in order to plead a § 1983 claim. <u>Walker v. Reed</u>, 104 F.3d at 157-58.

Also, even though the court is obligated to construe *pro se* complaints liberally, the court is not required to ignore facts that are pled by a prisoner when they undermine the prisoner's claim. The court may accept as true all facts pled in the complaint and conclude from them that there is no claim as a matter of law. <u>E.g.</u>, <u>Thompson v. Ill. Dep't of Prof'l Regulation</u>, 300 F.3d 750, 753-54 (7th Cir. 2002) (citing other cases). Also, liberal construction does not mean the court is under an obligation to re-write the complaint. <u>Snow v. DirecTV, Inc.</u>, 450 F.3d 1314, 1320 (11th Cir.2006).

Finally, personal involvement of a defendant is a prerequisite to liability under § 1983 since there is no *respondeat superior* liability under this section. <u>See</u> <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 676-77 (2009); <u>Gordon v. Hansen</u>, 168 F.3d 1109, 1113 (8th Cir. 1999). Consequently, the complaint must allege facts that tend to show that an individual defendant was personally involved

7

to allow the suit to proceed against that individual.  See, e.g., Blackmon v. Lombardi, 527 Fed. App'x 583, 584-85 (8th Cir. 2013).

III.    **DISCUSSION**

A.    **Eighth Amendment Claims**

The Eighth Amendment's guarantee against cruel and unusual punishment is violated when prison officials exhibit deliberate indifference to an inmate's serious medical needs.  Estelle v. Gamble, 429 U.S. 97, 104 (1976); Popoalii v. Corr. Med. Serv., 512 F.3d 488, 499 (8th Cir. 2008). The "deliberate indifference" standard incorporates both an objective and subjective component. On an objective basis, a prisoner must demonstrate he or she suffered from serious medical needs. With respect to the subjective component, a prisoner must demonstrate that the prison official sought to be held liable actually knew of but deliberately disregarded those needs.  E.g., Letterman v. Does, 789 F.3d 856, 862 (8th Cir. 2015); Jolly v. Knudsen, 205 F.3d 1094,  1096 (8th Cir. 2000).  The subjective component is on par with that of criminal recklessness.  That is, a "prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation." Jolly, 205 F.3d at 1096 (internal quotations and quoting authority omitted).

In this case, plaintiff claims violations of the Eighth Amendment based on fairly detailed allegations alleging the purported seriousness of the following:

1.      the failure to provide him a colonoscopy;

2.      inadequate treatment for Hepatitis C;

3.      inadequate treatment for an allegedly serious eye disease; and

4.      inadequate treatment for allegedly very painful back and shoulder problems.

Upon review, plaintiff's allegations of Eighth Amendment violations are sufficient at this stage to allow them to go forward, keeping in mind that the bar set by the deliberate indifference standard is a high one.  See, e.g., Burke v. ND Dep't of Corr, and Rehab., 294 F.3d 1043, 1044 (8th Cir. 2002) (allegations of deliberate indifference with respect to back issues and treatment for hepatitis C were sufficient to state a claim); cf. Hartstein v. Pollman, No. 13–cv–01232, 2014 WL 303933, at *2 (S.D. Ill. Jan. 28, 2014) (opining that an alleged denial of plaintiff's request for a breast cancer screening constituted a viable deliberate indifference claim for purposes of initial review).

A more difficult question is who plaintiff should be allowed to sue on these claims. Read literally, plaintiff's amended complaint alleges that all defendants committed the Eighth Amendment violations.  On its face, this simply is not plausible.[6]

Plaintiff alleges with respect to the Warden, acting Warden, and other supervisory officials at the NDSP that he personally notified them on one or more dates about every single constitutional violation named in the amended complaint and that each official failed to take reasonable steps to stop the constitutional violations.  These conclusory and formulaic allegations are insufficient to state a claim of individual liability against these defendants, particularly in light of Iqbal, supra (plaintiff must plead some facts making out a plausible claim that defendant acted with the requisite state of mind to violate plaintiff's constitutional rights, conclusory and formulaic allegations are not enough, and knowledge of a subordinate's violations alone does not amount to a supervisor's violation of the Constitution); see also Cherry v. Husz, No. 14–CV–1539, 2015 WL 4527978, at *7

---

[6] In plaintiff's earlier largely handwritten complaint, he limited his Eighth Amendment claims to some thirteen different NDSP employees, including the Warden, former acting Warden, and most of the NDSP supervisory personnel. He also sought to sue NDDOCR Director Bertsch, federal case manager Jussila, and the six unknown federal defendants.

(E.D. Wis. July 27, 2015); cf. Webb v. Hedrick, 409 Fed. App'x 33, 35-36 (8th Cir. 2010) (unpublished *per curiam*).

Plaintiff does, however, make more specific allegations with respect to NDSP defendants Hagan and Wilkens, whom he identifies as being a doctor and registered nurse, respectively. And, while not a model of pleading, plaintiff does appear to allege more specifically that they were personally responsible for the denials of his medical care. Hence, it will be recommended that plaintiff be given the benefit of this liberal construction and that he be permitted to proceed against Dr. Hagan and nurse Wilkens, both of whom are NDSP employees, with respect to his Eighth Amendment claims.

As for federal case manager Jussila, the only allegation specific to her is the following:

103.) I personally contacted Karen Jussila three (3) times <u>both</u> by telephone (2x) and one (1) in writing a letter, as I was directed to do after the first telephone call. Karen Jussila was further contacted by various medical personnel on various medical concerns (as told to Plaintiff by Jessica Wilkens and John Hagan).

This falls far short of alleging that she personally was involved in denying plaintiff the medical care that he claims he should have received.

This leaves the unnamed federal medical defendants. While it is permissible to proceed against unnamed or "John Doe" defendants until their identifies can be determined, there must be some allegations of fact indicating how they were involved in the denial of the medical care that plaintiff claims he should received and there presently are none.

In summary, it will be recommended that plaintiff be able to proceed with his Eighth Amendment claims as to defendants Hagen and Wilkens. If plaintiff want to sue others, he should either amend his amended complaint now with sufficient allegations of fact or, if he lacks sufficient

information now, wait until after he has had the opportunity for some discovery to file a motion to

add additional defendants and amend his amended complaint accordingly.[7]

**B.    First Amendment restrictions-upon-prisoner-communications claims**

Plaintiff asserts that defendants violated his First Amendment rights through implementation

and enforcement of NDSP policies that:

1.    prohibited  receipt by prisoners of nonsubscription bulk mail and catalogs;

2.    prohibited incoming and outgoing third and fourth class mail to and from prisoners;

3.    prohibited the receipt by prisoners of printed Internet pages or clippings not
      considered social or personal writings from an outside source; and

4.    prohibited use of an Internet pen-pal website for advertising for legal help in
      challenging his convictions.

Prisoners do not lose their First Amendment rights to communicate solely because they are

incarcerated.  Procunier v. Martinez, 416 U.S. 396, 408–10 (1974).  Prison officials may, however,

restrict First Amendment rights to satisfy legitimate countervailing penological interests.  See, e.g.,

Beard v. Banks, 548 U.S. 521, 528 (2006); Overton v. Bazzetta, 539 U.S. 126, 131-32 (2003);

Turner v. Safley, 482 U.S. 78, 84-85 (1987) ("Turner").

In this case, since plaintiff is no longer incarcerated at the NDSP, he no longer has standing

to seek injunctive relief for his First Amendment claims.  See, e.g., Martin v. Sargent, 780 F.2d

---

[7]  At this point, the court is only reviewing the amended complaint.   The reality, however, may be that some
of the medical care that plaintiff claims should have been provided was denied because one or more federal employees
determined that the NDSP should not provide the care.  If that is the case, plaintiff can seek to amend his amended
complaint and so allege either now or later after some discovery.  Also, defendants Hagan and Wilkens can assert this
as a defense.  As it stands now, however, plaintiff has failed to allege sufficient facts to sue any federal defendant,
particularly in their personal capacities for damages.  Also, 42 U.S.C. § 1983 applies only to claims against  state actors.
A claim against a federal employee in their individual capacities would have to be a Bivens claim named after  Bivens
v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971).  See also Carlson v. Green, 446
U.S. 14 (1980) (confirming that a Bivens type of claim can be brought for violations of the Eighth Amendment).

1334, 1337 (8th Cir.1985). And, insofar as any claim for damages, his amended complaint suffers from two deficiencies. First, it lacks specificity with respect to the when and how he was harmed by each of these policies, if at all. Also, it fails to plead sufficient facts to make out a claim as to any individual defendant. If these things are corrected with the filing of a second amended complaint, plaintiff may be able to state one or more claims that survive a screening.[8]

## C. Retaliation claims

Plaintiff alleges that virtually every defendant retaliated against him because he had filed grievances against them or others. Plaintiff also alleges that certain of the acts amounted to a denial of due process. These contentions will be addressed separately.

### 1. Alleged denial of due process

Plaintiff alleges that various defendants denied his right to due process by either denying certain grievances he had filed or in some fashion prohibiting his use of the NDSP's grievance process. None of the allegations, however, state a cognizable due process claim. This is because the Eighth Circuit and other courts have concluded that prison grievance procedures do not give rise to a liberty interest or other substantive rights protected by the Constitution. E.g., Buckley v.

---

[8] The case law addressing policies similar to those challenged by plaintiff here is either unsettled or so favoring the NDSP that any defendants sued in their individual capacities for damages are likely entitled to have the claims dismissed based on the affirmative defense of qualified immunity. See, e.g., Tope v. Commissioner of the Ind. Dep't of Corr., 652 F.3d 745, (7th Cir. 2011) (prohibition against advertising on pen-pal Internet sits and receiving material from pen-pal sites did not violate the First Amendment); Hughbanks v. Dooley, No. 10–4064, 2012 WL 346673, at * 8 (D.S.D. Feb. 2, 2012) (discussing conflicting authority on the subject of restrictions on prisoner receipt of bulk mail and catalogs, including the lack of any controlling, Eighth Circuit authority, and upholding as constitutional restrictions on bulk mail and catalogs similar to what plaintiff complains about in this case); cf. Bruesch v. Schmalenberger, No. 1:13–cv–077, 2015 WL 419799 (D.N.D. Feb. 2, 2015) (concluding that restrictions on prisoner access to pen-pal material at issue in that case did not violate the First Amendment). However, since the test for determining whether the restrictions serve a legitimate penological purpose under Turner requires a balancing of interests, the details of the policies, the reasons for their implementation, and properly pled facts (none of which are before the court now) may be of some import. Hence, it would be premature to dismiss these claims on grounds of qualified immunity even though under different circumstances it might be appropriate to do so. Cf. Story v. Foote, 782 F.3d 968, 969-70 (8th Cir. 2015) (the panel majority sua sponte upheld a district court's preservice dismissal of an inmate's complaint on grounds of qualified immunity).

Barlow, 997 F.2d 494, 495 (8th Cir. 1993) (*per curiam*) (state-created grievance procedures do not give rise to substantive rights hence the failure to process a prisoner's grievances did not give rise to a claim for denial of due process); Grigsby v. Hubert, No. Civ S–09–1067, 2009 WL 1861172, at *1 (E.D. Cal. June 29, 2009) ("Prisoners have no standalone due process rights related to the administrative grievance process.") (citing Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) and Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988)); Dickens v. Taylor, 464 F. Supp.2d 341, 353 (D. Del. 2006) (concluding that a prisoner "cannot maintain constitutional claims based upon an inadequate grievances system, that grievances were denied, that he was not provided a hearing upon the filing of a grievance, or that his grievances were not addressed."); cf. Phillips v. Norris, 320 F.3d 844, 847 (8th Cir. 2003) (no federal constitutional liberty interest in having prison officials follow state law or prison regulations); Flick v. Alba, 932 F.2d 728, 729 (8th Cir. 1991) "(We conclude that federal regulations providing for an administrative remedy procedure do not in and of themselves create a liberty interest in access to that procedure. When the claim underlying the administrative grievance involves a constitutional right, the prisoner's right to petition the government for redress is the right of access to the courts, which is not compromised by the prison's refusal to entertain his grievance.").

### 2. First Amendment retaliation claims

Prison officials may not retaliate against inmates for exercising their constitutional rights including availing one's self of the prison grievance process. Santiago v. Blair, 707 F.3d 984, 991-94 (8th Cir. 2013) ("Santiago"); Spencer v. Jackson County Mo., 738 F.3d 907 (8th Cir. 2013). In order to prevail on a First Amendment retaliation claim, a prisoner must establish: (1) he engaged in a protected activity, (2) an adverse action was taken against him that would deter a person of

ordinary firmness from engaging in that conduct, and (3) there is a causal connection between the protected activity and the adverse action. See id.

Under the pleading standards set forth above, plaintiff at this stage must allege sufficient facts from which the court can conclude that the occurrence of the alleged retaliation was plausible in light of these elements; conclusory and formulaic allegations of retaliation are not enough. See also Williams v. Stewart, 476 Fed. App'x 105, 106 (8th Cir. 2012) (unpublished *per curiam*) (concluding that a state prisoner's conclusory allegations of retaliatory discipline failed to state a § 1983 claim); Hartsfield v. Dep't of Corr., 107 Fed. App'x 695, 696 (8th Cir. 2004) (unpublished *per curiam*) (affirming the pre-service dismissal of some of prisoner's retaliation claims because he had not offered anything beyond conclusory allegations of retaliation but allowing one claim to proceed because of more detailed factual allegations); Atkinson v. Bohn, 91 F.3d 1127, 1128 (8th Cir. 1996) (*per curiam*) (plaintiff failed to state a retaliation claim because of the failure to plead sufficient facts including facts upon which a retaliatory animus could be inferred); Cf. Beauclair v. High, No. 14–3020, 2015 WL 93636, at ** 4, 6-7 (D. Kan. Jan. 7, 2015) (plaintiff's allegations of retaliation failed to provide sufficient facts to sustain a plausible claim of retaliation including enough facts to infer the requisite retaliatory intent); Frazier v. Zavaras, No. 10-cv-02534, 2011 WL 4537001, at *9 (D. Colo. Sept. 30, 2011) (reviewing the allegations of retaliation made against numerous defendants and concluding that only one alleged act of retaliation by a single defendant was supported by sufficiently pled facts so as to state a plausible claim). In this case, as will be detailed in a moment, most of plaintiff's claims fail either because of a lack of specifically pled facts or because what has been pled is plainly insufficient to satisfy the requirements for a cognizable claim of retaliation.

Before getting to that, however, what is also troublesome here are the number of persons plaintiff is attempting to sue for retaliation (more than sixteen) as well as the number of alleged acts of retaliation (more than 43). This raises several concerns. First, it calls into question the plausibility of all of what is being alleged - at least absent specific facts suggesting the existence of some massive conspiracy. Second, for the same reasons, it increase the probability that the real agenda is simply a desire on plaintiff's part to re-litigate under the guise of claims of retaliation virtually every administrative action taken against him during the short period of time he was at the NDSP (which was less than one year) with the concomitant burden this imposes on prison officials as well as this court.[9] Third, while in some cases the path of least resistance may be allowing arguably deficient claims to pass through to the next stage because they might be more easily dealt with then, there would in this case be the additional burdens imposed on the Clerk and the marshal's service in having to process and serve the pleadings on numerous persons, particularly if they are not still all employed by the state.

In short, while there is no heightened pleading requirement for plaintiff's retaliation claims, they are particularly deserving here of heightened scrutiny to insure that the minimum pleading requirements have been satisfied. See, e.g., Colon v. Couglin, 58 F.3d 865, 872 (2d Cir. 1995) ("Because we recognize both the near inevitability of decisions and actions by prison officials to which prisoners will take exception and the ease with which claims of retaliation may be fabricated, we examine prisoners' claims of retaliation with skepticism and particular care."); Cameron v.

---

[9] According to his amended complaint, plaintiff arrived at the NDSP in June 2014. (Doc. No. 4-1, p. 2). It appears by our docket that he was removed sometime in April 2015 given the fact that an item of the court's mail addressed to his NDSP address was returned undeliverable. In flipping through the pages of the documents plaintiff submitted, the undersigned's initial impression is that he cried retaliation with respect to every decision he did not like and that defendants nonetheless went to great lengths to work with him.

<u>Siddiq</u>, No. 14–3020, 2007 WL 4210422, at\* 4 (M.D. Ala. Nov. 28, 2007) ("[I]t is essential that federal courts carefully scrutinize retaliation claims brought by prisoners challenging actions of correctional personnel. [C]ourts must approach prisoner claims of retaliation with skepticism and particular care. This is [necessary because prisoners'] . . . claims of retaliation are . . . easily fabricated [and] pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration. This is so because virtually any adverse action taken against a prisoner by a prison official-even those otherwise not rising to the level of a constitutional violation-can be characterized [by the prisoner] as a constitutionally proscribed retaliatory act.") (internal citations and quotations omitted); <u>cf. Haugen v. Sutherlin</u>, 804 F.2d 490, 491, n.2 (8th Cir. 1986) (cautioning district courts to take seriously the screening function to avoid putting the clerk's office and the United States marshal through the "sisyphean task" of having to process and serve pleadings on numerous defendants that fail to state a sufficient claim against them in the first instance).

After careful review of plaintiff's allegations of retaliation, a liberal reading of plaintiff's amended complaint is that he has pled just enough to state a retaliation claim against defendant Todd Flanagan as set forth in ¶ 19 of the amended complaint. Here, plaintiff alleges that Flanagan submitted a false misbehavior report against him purportedly because he named Flanagan in an earlier grievance. While these allegations are right on the borderline of being sufficient, plaintiff does allege, at least by implication, that he was wrongfully charged with sexual harassment on September 27, 2014, because of the allegedly false report. He also alleges that he had filed a grievance against Flanagan for purportedly delaying an investigation with respect to another matter–another, earlier grievance that he had filed against Flanagan was earlier in time. At least with respect to this claim and unlike some of the others, there are allegations from which the court

could infer the possibility of the requisite retaliatory motive (despite the low probability of a corrections officer being upset by a charge that he or she improperly delayed an investigation) and sufficient facts to put the defendant on notice of what the claim is. Further, the making of a false disciplinary report is sufficiently adverse conduct to meet the second element required to establish a retaliation claim. See, e.g., Santiago, 707 F.3d at 993 ("A prisoner has a cause of action when the prisoner alleges that prison officials filed disciplinary charges based upon false allegations against the prisoner in retaliation for the prisoner's participation in grievances against prison officials.") (internal quotations and quoting authority omitted).[10]

For many of the same reasons, it is recommended that the retaliation claim in ¶ 23 against Steve Heit be allowed to go forward, even though this claim is more problematic given the lack of specificity with respect to the nature and time of the grievances that plaintiff claims he made against Heit.

Finally, it is also recommended that plaintiff be allowed to proceed against Steve Foster with respect to the retaliation claim set forth in ¶ 61. In that claim, plaintiff alleges that on February 26, 2015, he was threatened by Foster with return to the federal prison system in retaliation of his having utilized the prison grievance process and because Foster was personally named in several of the grievances. While not all threats of future retaliatory action may be enough to satisfy the second element of adverseness, a jury could conclude that this threat was sufficient. Compare Santiago, 707

---

[10] The court in Santiago went on to say, however, that any such claim would be defeated by a showing that the disciplinary conviction was based on "some evidence." Id. at 933. Since it was earlier decided that this screening should be confined to plaintiff's amended complaint, the material that plaintiff has submitted will not be considered. That being said, some of the documents that plaintiff has submitted, if valid, suggest that plaintiff was found to have committed the violation of sexual harassment by a disciplinary committee and that the determination was based upon "some evidence." If that is the case, then plaintiff's claim most likely will fail notwithstanding his claim that this evidence was false. See id.; Hartsfield v. Nichols, 511 F.2s 826, 829-31 (8th Cir. 2008) ("a report from a correctional officer, even if disputed by the inmate and supported by no other evidence, legally suffices as 'some evidence' upon which to base a prison disciplinary violation").

F.3d at 992 (jury could conclude that the alleged threats of violence for having filed grievances were sufficient) with Martin v. Sargent, 780 F.2d 1334, 1339 (8th Cir. 1985) (verbal threats for filing grievances of unspecified content held in that case to be insufficient to state a claim for retaliation).[11]

As for any remaining claims of retaliation that plaintiff may be attempting to make, the recommendation is they not be allowed to go forward. This includes the following

- The claims against Steve Heit in ¶¶ 24, 26, 30, 39; Denise Senger in ¶¶ 25 & 29; Shaun Fode in ¶¶ 27, 34, 37; Steve Foster in ¶¶ 28, 40; Jessica Wilkens in ¶ 32; Justin Helgeson in ¶¶ 38, 42-44, 46, 51, 53-54; and Karla Marsh in ¶¶ 41 & 45. Plaintiff alleges in these claims that the adverse action was either the denial of a grievance or, more vaguely, that the particular defendant denied "plaintiff the inmate grievance process." While the act of retaliation need not itself be a constitutional violation, it still must be sufficiently adverse so that it is likely to deter a person of ordinary firmness from engaging in the protected conduct as determined on an objective basis. And unlike, for example, the making of false disciplinary charges, threats of bodily harm, denials of favorable prison work, and subjecting a prisoner to harsh living conditions that the courts have held to constitute a sufficiently adverse action, the denial of a grievance or denial of the inmate grievance process is not sufficiently adverse on an objective basis. See, e.g., Dicey v. Hanks, No. 2:14-cv-2018, 2015 WL 4879627, at *5 (E.D. Cal. Aug. 15, 2015) ("denial of a grievance neither constitutes an adverse action that is more than de minimis nor is it sufficient

---

[11] Since plaintiff initiated this action, the circumstances have changed in that he was removed from the NDSP. If plaintiff wants to sue over this specifically, he will need to amend his pleadings since the only claim presented in the amended complaint is with respect to Foster's alleged threat.

to deter a prisoner of 'ordinary firmness' from further First Amendment action");
Frazier v. Zavaras, No. 10-cv-02534, 2011 WL 4537001, at *9 (D. Colo. Sept. 30,
2011) ("denial of an administrative grievance is not an 'adverse action'"); Burgos
v. Canino, 641 F. Supp. 2d 443, 454 (E.D. Pa. 2009) ("The rejection or denial of
grievances does not, by itself, suggest that the action was adverse or retaliatory.");
Martin v. Woodford, No. 1:08-cv-00415, 2009 WL 30300 , at **5-6 (E.D. Cal. Jan.
6, 2009) (discussing why denial of an administrative grievance does not constitute
adverse action and recommending dismissal of retaliation claims based on such
denials at the screening stage for not stating a cognizable claim).  Also, a separate
reason for denial of some of these claims is the lack of sufficient pled facts to make
out a plausible claim that the defendant acted with the requisite intent.

- The claim against Justin Helgeson in ¶ 52.  The allegation that plaintiff was told on
  one occasion that he could not access the law library or use the word processor
  without more is not a sufficiently adverse action on an objective basis to satisfy the
  second element of a claim for retaliation.

- The claims against Mark Schwer in ¶ 20, Corkey Stromme in ¶ 21, and Corey Wald
  in ¶ 22 because of the failure to plead sufficient facts with respect to what lies were
  allegedly told by these defendants when referring him to administrative segregation
  and more specific facts from which it could be inferred that the defendants acted with
  the requisite retaliatory intent. The mere allegation that  plaintiff had utilized the
  prison grievance process is not enough.

- The claims against Craig Thuerer in ¶ 47, Jody Kulman in ¶ 59, and Paul Belisle in ¶ 60 because of the failure to allege sufficient facts from which it could be inferred that they acted with the requisite retaliatory intent. The allegation that plaintiff filed grievances against other persons is not enough.

- The claims against Justin Helgeson in ¶ 48, Mark Schwer in ¶ 49, Jamie Pederson in ¶ 50, Corky Stromme in ¶¶ 56 & 58, and Steve Foster in ¶ 57. The conclusory and formulaic allegations in each of these paragraphs that the defendant did "intentionally cause, persuade, entice, induce, order, and direct" officers to write false disciplinary reports is insufficient because of the lack of pled facts with respect to the how, when, and where the alleged acts took place. Also, for some of these claims, the allegations are insufficient to infer that the defendant acted with the requisite retaliatory intent.

- The claims against Jean Sullivan in ¶ 31, Steve Foster in ¶ 33, Karla Marsh in ¶ 35, and Justin Helgeson in ¶ 36 because the allegations are so lacking in particulars with respect to the alleged retaliatory acts and/or facts from which the requisite retaliatory motive can be inferred.

### D. Equal Protection Claim

Plaintiff next asserts that defendants knowingly and intentionally violated his constitutional right to equal treatment and protection under the law to the extent that they treated him differently than inmates designated to "preferred housing." Specifically, he asserts:

64.) Plaintiff is currently incarcerated at the North Dakota State Penitentiary which is comprised of the following housing units for the general population (i.e. west units, east units, north units, and south units).

65.)     There is also orientation and administrative segregation housing units at the North Dakota State Penitentiary.

66.)     The west units, east units, north units, and south units is considered "general population" of the North Dakota State Penitentiary.

67.)     Inmates in the west units, east units, north units and south units are all maximum custody inmates and have the exact same custody levels.

68.)     The west units, east units, north units, and south units are similarly situated within the confines of the North Dakota State Penitentiary; except for the treatment of the inmates housed in the South units.

69.     Prisoners housed in the west units, east units and north units have intentionally been treated differently than those inmates housed in suoth unite; where inmate are afforded a far greater range of rights and privileges.

70.)     Inmates housed in suoth units (i.e. called "preferred housing" by the staff) have keys to their own cells; allday recreation; all day access to the telephone; all day access to watch t.v.; all day access to the j-pay machine to download music; all day access to j-pay machine to use of the e-mail machine to e-mail family, friends and others; their own washers and dryers for only the south unit; their very own nautical equipment for only the south unit to use; all day access to the day areas; all day access to the microwave machine; all day access to the soda pop machine; all day recreation time; all day access to their unit staff; all day access to religious retreats; they are the first to be called to the dining room cafeteria to eat; they are the first to be called to the inside gymnasium recreation area; they are the first to be called to the outside recreation areas; they are the first to be called for library use; they are the first to be called for the use of the electronic law library; they are the first to be called for the use of the word processor; and these "similarly situated" inmates are treated a lot better than those inmates housed in west units, east units and north units.

(Docket No. 12) (errors in original).

Because plaintiff does not claim he was a member of a protected class or that a fundamental right was violated, to prove a denial of equal protection he must show that "similarly situated classes of inmates are treated differently, and that this difference in treatment bears no rational relation to any legitimate penal interest." Phillip v. Norris, 320 F.3d 844, 848 (8th Cir. 2003) (quoting Weiler v. Purkett, 137 F.3d 1047, 1051 (8th Cir. 1998)).  Here, the only thing that plaintiff has alleged is that one housing unit at the NDSP is accorded  more privileges than the other housing units.  And, while plaintiff does not even allege what housing unit he was in, presuming it was one of the other

"less privileged" housing units, he has not alleged enough to state a *plausible* claim for denial of equal protection. This is because it is clearly established that prison authorities can provide greater privileges to groups of prisoners as an incentive for good behavior. See, e.g., Green v. Grams, No. 10–CV–745, 2012 WL 244941, at ** 2-3 (W.D. Wis. Jan. 19, 2012); Johnson v. Harmon, 2005 WL 17772752, at ** 12-13 (E.D. Ark. July 1, 2005).[12]

**E.      Denial of access claims**

In the section where plaintiff sets forth his claims of retaliation, plaintiff also asserts that Shaun Fode and Justin Helgeson endeavored to deny him access to the law library. Specifically, plaintiff asserts:

> Shaun Fode is further retaliating against Plaintiff by personally, knowingly with intent and purpose, to intentionally deny, delay, and interfer with Plaintiff's "Access to the Courts" by denying Plaintiff access to the law library for reseach purposes and access to a person trained in the alw. Shaun Fode was notified on 3-20-2015 of these issues and is aware of this concern and is ignoring my constitutional rights to access the courts in a deliberate, intentional manner to intentionally and deliberately retaliate against me and deny me access to the courts.
>
> * * *
>
> Justin Helgeson did personally, knowingly, with intent and purpose, deny plaintiff the use of the law library and the word processor (i.e. by way of a direct order to not go in there) on 1-30-2015 in retaliation for Plaintiff utilizing the prison grievance procedure; whereby Plaintiff personally named Justin Helgeson in several grievances of various complaints.

(Docket No. 23) (errors in original). Insofar as these assertions can be construed as a claim for denial of access to the courts, it should be denied.

---

[12]   Even though an equal protections claim would be subject to the four-factor Turner test in these circumstances, see, e.g., Fegans v. Norris, 537 F.3d 897, 906 (8th Cir. 2008), the difference between the possibility that plaintiff might have a First Amendment claim because of limitations placed on his ability to communicate with outsiders, if sufficient facts are pled and depending on the details of the policies, and this claim is simply one of plausibility.

To sustain such a claim, it is not sufficient to merely allege a denial of access to legal materials, even if the denial is systemic. Sabers v. Delano, 100 F.3d 82, 84 (8th Cir. 1996). Rather, a prisoner must plead prejudice or an actual injury. Id.; see also Klinger v. Dep't of Corr., 107 F.3d 609, 616-17 (8th Cir. 1997). Here, plaintiff's amended complaint is devoid of any allegation of specific facts suggesting that he suffered prejudice to a nonfrivolous legal claim and is deficient for that reason. See, e.g., Antonelli v. Tipton, 356 Fed. App'x 903, 904 (8th Cir. 2009) (citing Marshall v. Knight, 445 F.3d 965, 968 (7th Cir.2 006) for the proposition that notice pleading requires specific allegations as to prejudice for a prisoner claiming denial of access to the courts).

**F.      Due process claim against Rick Gardner**

Plaintiff asserts one claim against Rick Gardner, the Director of Rough Rider Industries. The allegation is that Gardner violated his right to due process and violated federal law "by exceeding the statutory cap on the price of prison commissary items; by over charging plaintiff for commissary goods in an oppressive and abusive manner to maliciously and sadisticaly corner the market in an oppressive and abusive manner."

Plaintiff, however, has not alleged any applicable federal statutory law and the undersigned is aware of none. Plaintiff's contention that he was denied due process is a nonstarter.

**IV.      CONCLUSION AND RECOMMENDATION**

The undersigned **RECOMMENDS** the following:

1.      Plaintiff be permitted to proceed with the following claims:

      a.      The Eighth Amendment claims of deliberate indifference as set forth earlier against defendants Dr. John Hagan and Jessica Wilkens.

b. The First Amendment retaliation claim against Todd Flanagan as set forth in ¶ 19 of Doc. No. 4-1.

c. The First Amendment retaliation claim against Steve Heit as set forth in ¶ 23.

d. The First Amendment retaliation claim against Steve Foster as set forth in ¶ 62.

2. The court **DISMISS WITHOUT PREJUDICE** all of the remaining claims and defendants unless on or before December 15, 2015, plaintiff files a second amended complaint addressing the deficiencies noted above.

3. The court await ordering service of process to see whether or not plaintiff submits a second amended complaint and, if such a complaint is submitted, it be re-screened to determine whether any additional cognizable claims have been pled and, if so, as to which defendants.

4. Upon completion of the screening process, the court order the clerk to arrange for service of the amended complaint or any further amended complaint along with a copy of the court's final screening order.

## NOTICE OF RIGHT TO FILE OBJECTIONS

Pursuant to D.N.D. Civil L.R. 72.1(D)(3), any party may object to this recommendation within fourteen (14) days after being served with a copy of this Report and Recommendation. Failure to file appropriate objections may result in the recommended action being taken without further notice or opportunity to respond. **Because plaintiff in this case is incarcerated and located out-of-state, the deadline for filing objections shall be extended to December 15, 2015**.

Dated this 30th day of October, 2015.

/s/ Charles S. Miller, Jr.
Charles S. Miller, Jr., Magistrate Judge
United States District Court