UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
SOUTHWESTERN DIVISION

| | | |
|---|---|---|
| Michael Gordon, | ) | |
| | ) | |
| Plaintiff, | ) | **AFFIDAVIT OF** |
| | ) | **JOHN HAGAN, M.D.** |
| vs. | ) | |
| | ) | |
| Lean, K. Bertsch, Director, et al., | ) | Case No. 1:15-cv-026 |
| | ) | |
| Defendants. | ) | |

STATE OF NORTH DAKOTA  )
                       ) SS.
COUNTY OF BURLEIGH     )

John J. Hagan, M.D., states, as follows:

1. I declare under penalty of perjury that the statements made in this affidavit are true and correct to the best of my knowledge and belief.

2. At all times relevant to the Complaint in the above-referenced action, I was employed by the North Dakota Department of Corrections and Rehabilitation (DOCR) as a physician serving the inmate population.

3. Michael Gordon (Gordon) was an inmate at the North Dakota State Penitentiary (NDSP) from June 11, 2014 until March 27, 2015.

4. I examined Gordon on November 10, 2014 for complaints of back pain and shoulder pain. Based on my examination of Gordon's back, his complaints of occasional radiating pain did not correspond appropriately to any peripheral nerve distribution or dermatome. In the absence of evidence of myelopathy or radicular pain, I recommended the continued use of anti-inflammatories and activity modification. Gordon stated his shoulder discomfort started three to four weeks prior to the exam. Upon examining his shoulder, I found no evidence of subscapular tendinitis, and noted the presentation was markedly abnormal for supraspinatus tendinitis. Gordon agreed to

restrict his weight lifting and sports while undergoing evaluation and treatment by physical therapy.  Exhibit 25.

5. On December 26, 2014, I had a follow up exam with Gordon relating to his back and shoulder pain.  An MRI was performed on December 4, 2014, at the request of physician assistant Deb Houdek.  I discussed the results of Gordon's December 4, 2014, MRI with him.  The MRI revealed mild bulging at L4-L5 with no compression or impingement, and posterior central disc protrusion at L5-S1 of 3mm causing mild compression of the anterior thecal sac and making contact with, but not compressing, the S1 nerve route on the right.  Upon examining Gordon's shoulder it was noted that his range of motion was normal.  I instructed Gordon to take 300 milligrams of gabapentin and counseled him to restart Etodolac, an anti-inflammatory.  I also referred him to physical therapy to evaluate and treat his low back pain and bilateral shoulder pain.  Gordon's TSH (thyroid stimulating hormone) levels were also reviewed at this appointment and it was noted that his TSH had a mild elevation, but nothing of clinical importance, but would be rechecked in the future.  A shoulder exam was also performed and again, was in contradiction to stated complaints.  Exhibit 30.

6. I had one subsequent visit with Gordon regarding issues that are not relevant to his Complaint.  This appointment occurred on January 27, 2015.

7. On February 24, 2015, Nurse Practitioner Jenna Herman saw Gordon under my direction as a follow up for his back and shoulder pain and to also recheck his TSH levels.  Gordon's TSH levels were normal so no further testing was required.  Gordon reported ongoing low back pain and increasing shoulder pain.  Herman increased his gabapentin to 400 milligrams twice daily and referred him to physical therapy to treat the back and shoulder pain.  Herman also instructed Gordon to continue taking the Etodolac.  Exhibit 34.

8. On March 24, 2015, I examined Gordon again.  Gordon's original request related to shoulder pain and dry eyes.  During the appointment, Gordon requested I

exam him for his back pain and Hepatitis C treatment as well. Regarding Gordon's shoulder pain, Gordon stated that he stopped physical therapy because the exercises caused him too much pain. Gordon agreed to return and visit with physical therapy further. Gordon's dry eyes have been a continued problem with him for which he was seeing Dr. Towle. I recommended he write a request to optometry and ask to be seen. I increased Gordon's gabapentin to 800 milligrams twice a day to control his back pain. It was decided that Gordon would be re-evaluated in four weeks and if the increased dosage of gabapentin was not improving his condition I would request an evaluation and consultation with pain management for consideration for epidural steroid injections. When discussing Hepatitis C treatment, I explained to Gordon that his current lab results make him a low priority for Hepatitis C treatment according to the Federal Bureau of Prisons (FBOP) guidelines. Gordon disagreed with this and insisted that a liver biopsy be done. I again informed Gordon that a liver biopsy is not part of the new guidelines. This conversation is the only discussion I had with Gordon regarding Hepatitis C treatment. Exhibits 36 and 37 (FBOP Guide on Chronic Hep. C).

 9. I did not see Gordon after the March 24, 2015, exam as he was transferred out of NDSP.

 10. I did not deny, refuse, delay, interfere, or fail to provide Gordon with adequate medical treatment.

 11. I did not falsify medical records.

 12. I did not lie to Gordon about his treatment, treatment referrals, or any diagnosis of a condition. I did not and do not pursue a standard of medical care that is known to be ineffective. My goal as a healthcare provider is to have a healthy inmate population and take care of their medical needs to the best of my ability.

 13. Gordon never requested a colonoscopy screening be done during any interactions I had with him. I never treated Gordon for any complaints regarding a

colonoscopy. I was not deliberately indifferent to Gordon's medical needs relating to his colon as I was not aware of any request for a colonoscopy.

14. Although I did not treat Gordon for an issue related to his colon or a colonoscopy, I reviewed the medical records and note that he was treated by Physician Assistant Deb Houdek (Houdek) on December 10, 2014. At this appointment Houdek ordered appropriate screening labs including stool studies to detect blood loss. These tests, known as fecal occult blood tests, are the US Preventative Services Task Force standard of care for screening for colon cancer. The results of those tests were received on December 14, 2014, and showed no blood in Gordon's stool or evidence of increased risks of polyps or colon cancer. Exhibits 28-29.

15. I was not deliberately indifferent to Gordon's medical needs relating to his shoulder pain as I examined him three separate times regarding this issue. Gordon was examined and his range of motion was observed at each visit and based on the results of those examinations and observations, I did not feel that more intensive treatment, such as surgery, was needed. I treated Gordon with medication and referred him to physical therapy. Physical therapy did not recommend any imaging during evaluation of Gordon on January 8, 2015.

16. I only had one conversation with Gordon relating to Hepatitis C treatment. I did not inform Gordon that he would receive Hepatitis C treatment beginning January 2015. I was not deliberately indifferent to Gordon's Hepatitis C medical needs. I monitored his platelet count and his liver associated enzymes and used the FBOP's Clinical Practice Guidelines to decide the appropriate treatment.

17. I was not deliberately indifferent to Gordon's back pain as I examined him three separate times regarding this issue within a ten month time period. In the ten months Gordon was housed at NDSP he received x-rays of his back as well as an MRI. Based upon my experience, Gordon's MRI results did not indicate more intensive treatment was needed. I treated Gordon with medication and referred him to physical

4

therapy. My notes indicate that after I increased Gordon's medications, if his condition did not improve, I would look into getting a consultation for Gordon to have epidural steroid injections. However, this never proceeded as he was transferred out of the facility.

Dated this 26 day of May, 2017.

John J. Hagan, M.D.

Subscribed and sworn to before me this 26 day of May, 2017.

Denise Senger
Notary Public

DENISE SENGER
Notary Public
State of North Dakota
My Commission Expires August 13, 2020

e:\wiese\active cases\department of corrections and rehabilitation - inmates\gordon, michael\affidavits\medical affidavits\hagan aff2.docx